DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | CASE NO. 1:03 CR 165 |
| Plaintiff, | ) ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | ANALYZING THE SENTENCING |
| | ) | FACTORS SET FORTH IN 18 U.S.C. |
| Marcellus Smith, | ) | SECTION 3553(a) |
| | ) | |
| Defendant. | ) | |

### I. Introduction

The Sixth Circuit has remanded the sentencing of Marcellus Smith who was sentenced prior to the *Booker* decision.  In the remand, this Court was told to articulate its reasons for imposing the two level firearm enhancement and also to elaborate on the factors it considered in a awarding only a two level downward departure for substantial assistance.  The Court filed a memorandum opinion on November 2, 2006 (Docket No. 257) explaining the two level firearm enhancement and its reasoning for only awarding a two level downward departure for substantial assistance.  As a consequence, the offense level for the defendant is 29 and with a criminal history category of I, the sentencing range is, as it was before, 87 to 108 months.

### II.  The Analysis Required by 18 U.S.C. § 3553(a)

The Court sets forth its analysis of the sentencing factors required by *Booker* and the statutory guidance provided by 18 U.S.C. §3553(a) as follows:

**(a)  Factors to be considered in imposing a sentence.**

(1:03 CR 165)

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -

**(1) The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The offense conduct has been described in paragraphs 15 through 26 of the presentence report and which follow:

> The following information was obtained from the factual basis portion of the Plea Agreement between the defendant and the government, and the affidavit in support of the arrest warrant issued in the instant offense.
>
> Beginning at least as early as November of 2002, and continuing through March of 2003, Marcellus Smith, Rohan A. Wilson, Tony Wilson Green, aka Kevin Haughton, aka Jiba, Troy Williams, aka Omar Pitter, Kerven Telsey, aka Jean Fritz, and Regina Stackhouse, conspired to distribute more than 5 kilograms but less than 15 kilograms of cocaine.
>
> It was part of the conspiracy that Kerven Telsey introduced Marcellus Smith to Rohan Wilson. Later Marcellus Smith began obtaining quantities of cocaine from Rohan Wilson. Rohan Wilson employed Troy Williams, aka Omar Pitter and Tony Wilson Green, aka Kevin Haughton, to drive quantities of cocaine from Florida to the Cleveland, Ohio area. Rohan Wilson would then fly into Cleveland and meet the drivers at Marcellus Smith's apartment at 12613 Forest Avenue (down), Cleveland, Ohio.
>
> Once at Marcellus Smith's apartment, Rohan Wilson would provide Smith with quantities of cocaine to distribute to his customers. Rohan Wilson, Tony Wilson Green, and Troy Williams, would also sell amounts of cocaine to their various customers from Marcellus Smith's home.
>
> The first time Rohan Wilson had drivers bring cocaine to Cleveland, Ohio was in the fall of 2002. During that trip, Rohan

(1:03 CR 165)

>Wilson, Kerven Telsey, Troy Williams and others coordinated the delivery of approximately 5 kilograms of cocaine. When the cocaine was sold, Marcellus Smith paid Rohan Wilson for the cocaine he had received and thereafter Wilson departed.
>
>In March of 2003, Rohan Wilson, Kerven Telsey, Tony Wilson Green, and Troy Williams and others coordinated another delivery of cocaine to Marcellus Smith from Florida to Cleveland.
>
>On March 20, 2003, members of several task forces, Cleveland Police Officers and the Federal Bureau of Investigation personnel made entry at 12613 Forest Avenue (up), pursuant to a search warrant. As entry was made, the officers discovered that the second floor residence was only occupied by seven females. Officers then knocked on the entrance to the first floor residence (down), and observed Rohan Wilson attempting to exit through the first floor window.
>
>Later investigation revealed that the defendant heard a loud commotion and someone yelled, "Police out there." The defendant saw a couple kilograms of cocaine in a box on the floor in the front living room. The defendant picked up the kilograms and felt them before placing them back into the box. As the police started shouting, the defendant ran to his bedroom to hide his gun, which was lying on the dresser. The gun was later found under the defendant's bed.
>
>While securing the first floor apartment, Kerven Telsey, Marcellus Smith, Rohan Wilson, Tony Green, and Henry Smith Jr. (not named in Indictment), were identified and detained.
>
>During the search of 12613 Forest Avenue (down), officers and agents recovered the following items: (1) two kilogram sized sealed packages of suspected cocaine with a weight of more than 1000 grams each, (2) one .40 caliber S&W semi-automatic pistol with one full magazine, (3) two digital scales, (4) one cocaine press instrument, and (5) two pipes containing suspected drug residue.
>
>During the search of 12613 Forest Avenue (up), the residence of Regina Stackhouse, officers recovered the following items: (1) five heat sealed packages containing U.S. currency totaling $84,000.00,

(1:03 CR 165)

> (2) one Footlocker bag containing over 100 grams of suspected crack cocaine and over 300 grams of suspected powder cocaine. Regina L. Stackhouse allowed Rohan Wilson and Marcellus Smith to store 284.9 grams of cocaine and $89,101.00 in currency in her residence. Although Regina Stackhouse did not participate in the distribution of any cocaine, she knew that Wilson and Smith were using her apartment to store and/or distribute cocaine. Regina Stackhouse was not compensated by either Rohan Wilson or Marcellus Smith for allowing them to use her residence in this manner. According to Regina Stackhouse, Marcellus Smith is her cousin.
>
> On 3/21/03 Officers arrested Troy Williams at the Super 8 Hotel located at 3795 Orange Place, Orange, Ohio, where Williams consented to a search of his suitcase. Upon searching the suitcase, the officers discovered a large amount of currency wrapped in cellophane totaling $29,700.00.

The defendant's acceptance of responsibility, as set forth in paragraphs 30 of the presentence report, is as follows:

> On July 1, 2003, the following unedited, typed statement was received regarding the defendant's actions in the instant offense:
>
> "I admit my guilt and accept full responsibility for my criminal conduct. On the date of my arrest, I was fully aware that several of my co-defendants had brought to my house multiple kilograms of cocaine. It was my intention to re-sell portions of the cocaine that was discovered by police.
>
> "I deeply regret my involvement in this offense. Soon after my arrest, I provided a full statement of my involvement. Soon after, I agreed to cooperate with the Government. I recognize that I will receive a substantial prison sentence for my actions. However, I intend to make the best out of a bad situation by participating in all programs available in the institution to assist me upon my release from prison.
>
> [signed] Marcellus Smith" [sic]

(1:03 CR 165)

The defendant will be 30 on March 5, 2007.  He has never married, but he has two children who are presumably 12 and 11.  According to the sentencing memorandum filed on behalf of the defendant, in addition at the time of the defendant's sentencing, he states that the mother of his children was pregnant and since his incarceration has given birth to twins.  Against that background, the defendant contends that the mother of his children has never been able to provide adequate care and a stable residence for his children and so his goal, upon release from prison, is to provide stability for the children.  Against that background, the defendant argues the sooner his release the better for his family.  The defendant also contends that he has undergone significant rehabilitation while incarcerated.[1]

**(2)   The Need for the Sentence Imposed**

  **(A) to reflect the seriousness of the offense, to promote respect
  for the law, and to provide just punishment for the offense;**

The defendant was involved in an interstate cocaine conspiracy that involved significant amounts of cocaine and resulted in a multi-defendant indictment.  Only one of the defendants stood trial and that trial ended in a mistrial.  Another defendant, Rohan Wilson, began trial with the defendant whose case ended in a mistrial, but Rohan Wilson entered a plea of guilty after the jury was impaneled and was sentenced to a term of 120 months.

The defendant Telsey, whose trial ended in a mistrial, subsequently entered into a negotiated plea which resulted in a sentence of 30 months.

---

[1]The sentencing memorandum filed on behalf of the defendant contains a two-page letter from Marcellus Smith to his lawyer.  A copy of the two-page letter is attached hereto as Appendix I.

(1:03 CR 165)

The sentences for the other defendants follows:

Rohan Wilson was sentenced to 120 months imprisonment with five years supervisioned release; Tony Wilson Green was sentenced to 66 months imprisonment, 4 years supervised release; Troy Williams was sentenced to 96 months imprisonment with five years supervised release; Kerven Telsey was sentenced to 30 months imprisonment with three years supervised release and Regina Stackhouse was sentenced to five months imprisonment with three years supervised release.

The interstate trafficking of cocaine is a serious problem for insular states such as Ohio even though there are no ports of entry for cocaine as on the two coasts. Against that background, it is important to impose sentences that reflect the seriousness of interstate trafficking in cocaine and with the accompanying devastating effects that it has on the inter-city population.

Consequently, a substantial sentence is necessary to show respect for the law and provide just punishment.

**(B) to afford adequate deterrence to criminal conduct;**

The government has argued that the Court should impose a sentence at the high range, i.e., 108 months. However, the Court is of the view that its previous sentence of 88 months was appropriate under all the circumstances and provides adequate deterrence to criminal conduct.

The Court is aware that the defendant, while in prison, has apparently engaged in activity designed to assist his return to life with his family and the Court applauds such conduct.

(1:03 CR 165)

However, the Court is of the view that the 88 month sentence must remain in effect to provide adequate deterrence to criminal conduct.

### (C) to protect the public from further crimes of the defendant;

The defendant's criminal history category was I which suggests that he will not become a recidivist upon release from prison. Consequently, the Court is of the view that the public is protected from further crimes of the defendant by a sentence of 88 months.

### (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

It is already apparent that the defendant is making good use of his time while in prison to further his education and vocational training. Specifically, the defendant has earned his GED; has successfully completed 12 hours of class room study in "Read and Grow Rich"; has successfully completed a mentoring program consisting of 15 hours of training; has successfully completed requirements for drug education and has successfully completed the ACE Advanced Circuit Training class.

### CONCLUSION

For the reasons set forth herein, a sentence of 88 months with supervised release for five

7

(1:03 CR 165)

years and within the advisory guideline range, is a sentence sufficient, but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a)(2).

      IT IS SO ORDERED.

| | |
|---|---|
|  November 21, 2006 |  */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |